[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 19, 2008
THOMAS K. KAHN
CLERK

Nos. 07-15911 and 08-11870
Non-Argument Calendar
_____

Agency No. A95-914-303

SIKKANDER SUBJALI CHACKU,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals

_____

(November 19, 2008)

Before TJOFLAT, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Petitioner Sikkander Chacku, a native and citizen of India, entered the United States on April 27, 1997, as a nonimmigrant visitor authorized to remain for a period not to exceed three months. On December 3, 2004, the Department of Homeland Security ("DHS") served Chacku with a Notice to Appear, which alleged that he was removable as a nonimmigrant because he had remained in the United States longer than permitted and failed to comply with the conditions of the nonimmigrant status.

On November 17, 2005, Chacku, represented by counsel, appeared before an Immigration Judge ("IJ") and stated that he had filed a Form I-140 Immigrant Petition for Alien Worker ("visa petition") based upon an approved Application for Alien Employment Certification ("labor certification"). He represented that the visa petition had been filed on September 19, 2005, and because his labor certification already had been approved, he would be eligible for an adjustment of status under Immigration and Nationality Act ("INA") § 245(I), 8 U.S.C. § 1255(I), if his visa petition were approved. He therefore requested a continuance of his removal proceedings so that his visa petition could be adjudicated. The IJ continued the removal proceedings to January 5, 2006, after Chacku and the Government agreed that, if his visa petition were not approved by that date and the IJ ordered his removal, he would immediately depart voluntarily.

The removal hearing commenced on January 5, as scheduled. His attorney was not prepared to go forward, so the hearing was continued to February 9, 2006, when it was reconvened. At that time, Chacku conceded removability and requested another continuance because his visa petition had not yet been adjudicated. The IJ denied his request for a continuance and, at the conclusion of the hearing, ordered Chacku's removal, granting him the voluntary departure he and the Government had previously agreed to. In ordering Chacku's removal, the IJ cited Board of Immigration Appeals ("BIA") precedent holding that an alien has no absolute right to the adjournment of removal proceedings in order to await the disposition of an application for adjustment of status. Moreover, the denial of a continuance for adjudication of a pending employment-based visa petition was discretionary since Chacku was not eligible for an adjustment of status until his pending petition was approved.

On March 10, 2006, Chacku appealed the IJ's decision to the BIA. On December 7, 2006, while the appeal was pending, he moved the BIA to remand the case to the IJ because his visa petition had been approved on November 15, 2006. He attached to his motion a copy of a Form I-485, Application to Register as Permanent Resident or Adjust Status ("adjustment application"), which showed that he filed the application on December 6, 2006, representing that "an immigrant

3

petition giving [him] an immediate available immigrant visa number ha[d] been approved." He also attached a copy of a "Notice of Action," which showed that, as a skilled worker, his priority date[1] for a visa was February 21, 2003.[2] (Id. at 130). Because he attached new evidence, the BIA apparently construed his motion as a motion to reopen.

On November 30, 2007, the BIA affirmed the IJ's decision, dismissed Chacku's appeal, and denied his motion to remand. The BIA held that the IJ did not abuse his discretion in denying the continuance, as the IJ was under no obligation to hold the removal proceedings in abeyance indefinitely, and unlike the petitioner in Merchant v. U.S. Att'y Gen., 461 F.3d 1375 (11th Cir. 2006), Chacku did not have either an approved visa petition or a visa immediately available to him by the date of the hearing. The BIA stated that, pursuant to INA

---

[1] Although the term "priorty date" is not clearly defined by statute or caselaw, an alien's priority date is the date on which his labor certification is approved, at which point he is permitted to file an I-140 "Immigrant Petition for Alien Worker" form to establish his eligibility to file the I-485 form. The Department of State Visa Bulletin is published monthly and lists cut-off priority dates for different immigration categories and birth countries. Only those aliens with priority dates before the cutoff date are permitted to file their adjustment of status applications.

[2] Although it is unclear from the record why Chacku was given a priority date of February 21, 2003, 8 C.F.R. § 204.5(d) provides that "[t]he priority date of any petition filed for classification under section 203(b) of the Act which is accompanied by an individual labor certification from the [Department of Labor] shall be the date the request for certification was accepted for processing by any office within the employment service system of the [Department]." See 8 C.F.R. § 204.5(d). Thus, although it is not explicitly stated in the record, February 21st likely became Chacku's priority date because that was the date on which his request for certification was accepted by the Department. See id.

4

§ 245(i)(2), the Attorney General may adjust the status of an alien if that alien "is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and an immigrant visa is immediately available to the alien at the time the application is filed." See INA § 245(i)(2), 8 U.S.C. § 1255(i)(2). The BIA noted that, according to the Department of State Visa Bulletin, Chacku's priority date for a visa to become available to him was February 21, 2003, and the current priority date for a third-preference category visa for India was May 1, 2001.[3] The BIA accordingly concluded that, because Chacku was not similarly situated to the alien in Merchant and was not currently statutorily eligible for a visa, the IJ's had ruled correctly. Furthermore, because a visa was not immediately available to Chacku, he failed to make a prima facie showing that he was eligible for an adjustment of status.

On December 31, 2007, Chacku moved the BIA to reconsider its disposition, asserting that the BIA had erred in denying his motion to remand. He contended that the date for measuring whether an applicant's priority date is

---

[3] "An immigrant visa is considered available for accepting and processing the application Form I-485 i[f] the [employment classification of the] applicant has a priority date on the waiting list which is earlier than the date shown in the [Department of State's Visa] Bulletin (or the Bulletin shows that numbers for visa applicants in his or her category are current)." 8 C.F.R. § 245.1(g)(1). It is this calculation that determines whether a visa number is immediately available to an alien. Importantly, "[a]n alien is ineligible for the benefits of [INA § 245] unless an immigrant visa is immediately available to him or her at the time the [adjustment] application is filed." Id.

5

current, such that a visa number is immediately available to him, is the date on which the applicant files his application for adjustment of status, or when he requests a remand. He argued that, on the date that he filed his application for adjustment of status and when he filed his motion to remand, his priority date was current; thus, he should not have been penalized by the subsequent retrogression of priority dates,[4] which caused his priority date not to be current. In support of his argument, he cited the BIA's decision in Matter of Briones, 24 I&N Dec. 355 (BIA 2007), which states that, because the respondent had a current priority date when he submitted his adjustment application to the IJ, he was "not rendered ineligible for such relief by virtue of the subsequent retrogression of his priority date, although final approval of the application would have to be held in abeyance."

On March 19, 2008, the BIA denied Chacku's motion to reconsider, finding that, unlike the respondent in Briones, Chacku did not have a current priority date when he filed his adjustment application or when he filed his motion to remand. This is because the priority date for a visa to become available to him was

_____

[4] The list of cut-off priority dates to file an adjustment application generally moves forward over time as cases are disposed of, but, under certain circumstances, such as when a large number of old cases makes its way through the system at the same time, the cut-off dates can actually retrogress, or roll back, which may place the cut-off earlier than the applicant's priority date, which would make the applicant ineligible to file an adjustment application.

February 21, 2003, and, on December 7, 2006 – the date on which he filed both his application for adjustment and his motion to remand – the priority date for an employment-based third-preference category visa for India, which is what he was seeking, was April 22, 2001. Thus, he was not prima facie eligible for adjustment of status when he filed his application, and therefore, he was not entitled to have his application held in abeyance.

Chacku seeks review of the BIA's decisions in two petitions for review. The first challenges the BIA's order denying his motion to remand and affirming the IJ's denial of a continuance. The second challenges the BIA's denial of his motion to reconsider. We have consolidated the two petitions.

In his petitions for review, Chacku first contends that the BIA's dismissal of his appeal from the IJ's denial of a continuance was improper because the record demonstrated that a labor certification already had been approved for him, and a visa petition was pending on the date of his last removal proceeding before the IJ. Second, he contends that the BIA erred in denying his motions to reopen and reconsider, as a visa was available to him in June and July 2007.

We review the denial of a motion for continuance for an abuse of discretion. Haswanee v. U.S. Att'y Gen., 471 F.3d 1212, 1214 (11th Cir. 2006). When the BIA issues a decision, we review only that decision, except to the extent that the

7

BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, the BIA issued its own decision, affirming the IJ's denial of Chacku's request for a continuance; thus, we review the BIA's decision.

The immigration regulations provide that the IJ may grant a continuance "for good cause shown." 8 C.F.R. § 1003.29. Section 245(i) of the INA, 8 U.S.C. § 1255(i), allowed certain aliens who were ineligible to adjust their status to pay a penalty fee for the convenience of adjusting their status without leaving the United States. This provision has expired, but Chacku was "grandfathered" in because an application for a labor certification was filed on his behalf on or before April 30, 2001, which was approvable when filed. See INA § 245(i)(1)(B)(ii), § 1255(i)(1)(B)(ii). Section 1255(i)(2) provides:

> (2) Upon receipt of [an adjustment] application and the sum hereby required, the Attorney General may adjust the status of the alien to that of an alien lawfully admitted for permanent residence if--
>
> (A) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and
>
> (B) an immigrant visa is immediately available to the alien at the time the application is filed.

INA § 245(i)(2), 8 U.S.C. § 1255(i)(2). An applicant for adjustment of status also must meet the other statutory eligibility requirements of INA § 245(a), which provides that, in the case of an alien lawfully admitted into the United States, such

8

alien may adjust his status "if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." INA § 245(a), 8 U.S.C. § 1255(a) (emphasis added). To be "eligible" to receive an employment-based immigration visa, an alien must file an I-140 petition, along with "an approved labor certificate," which Chacku did in this case. See Zafar v. U.S. Att'y Gen., 461 F.3d 1257, 1363 (11th Cir. 2006); 8 C.F.R. § 204.5(a)(2), (3).

In Merchant v. U.S. Att'y Gen., 461 F.3d 1375, 1376-77, 1380 (11th Cir. 2006), on which Chacku relies, we held that the denial of a continuance amounted to an abuse of discretion because, at the time that the alien moved for a continuance, he had: (1) an approved labor certificate; (2) an immediately available visa number; (3) filed an employment-based visa petition; and (4) filed an adjustment of status application. We explained that the alien's adjustment of status eligibility was not too speculative because he had done everything statutorily required of him under § 245(i), and the only thing standing between him and permanent resident status was the agency's approval of his employment-based visa petition and adjustment of status application. Id. at 1378-79. We also noted that, because the alien had complied with all of the

9

requirements "as of the time of the IJ hearing," the IJ abused his discretion by denying the continuance. Id. at 1379. Similarly, in Haswanee, we held that an IJ abused his discretion by denying a motion for continuance filed by an alien who had: (1) an approved labor certificate; (2) an immediately available visa number; and (3) filed an I-140 petition for an employment-based visa. Haswanee, 471 F.3d at 1217-19.

In this case, the IJ did not abuse his discretion in denying the motion for a continuance, nor did the BIA err in dismissing Chacku's appeal, because Chacku was not statutorily eligible for an adjustment of status on December 7, 2006, the day he filed his adjustment application, as he did not have an immigrant visa immediately available to him at this time.

We review the BIA's denial of a motion for reconsideration for an abuse of discretion. Assa'ad v. U.S. Att'y Gen., 332 F.3d 1321, 1341 (11th Cir. 2003). Regarding Chacku's motion to remand, which introduced new evidence, "if a motion to remand seeks to introduce evidence that has not previously been presented, it is generally treated as a motion to reopen under" 8 C.F.R. § 1003.2(c). See id. We review the BIA's denial of a motion to reopen for an abuse of discretion. Gbaya v. U.S. Att'y Gen., 342 F.3d 1219, 1220 (11th Cir. 2003).

10

It is within the discretion of the BIA to deny a motion to reopen for at least three reasons: "(1) failure to establish a prima facie case [of eligibility for adjustment of status]; (2) failure to introduce evidence that was material and previously unavailable; and (3) a determination that despite the alien's statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion." Al Najjar, 257 F.3d at 1302. In Matter of Briones, on which Chacku relies, the BIA affirmed the principle announced in a prior case, holding that "[b]ecause the [alien] had a current priority date when he submitted his adjustment application to the [IJ], he is not rendered ineligible for such relief by virtue of the subsequent retrogression of his priority date, although final approval of the application would have to be held in abeyance." 24 I&N Dec. at 357 n.3.

Here, it irrelevant that a visa was available to Chacku in June and July 2007, as the relevant date for determining whether a visa was available is the date on which he filed his adjustment of status application, in this case December 7, 2006. See INA § 245(a), 8 U.S.C. § 1255(a). Chacku did not have a current priority date for a visa at that time because the current priority date for the type of visa for which he qualified was May 1, 2001; therefore, he was not similarly situated to the respondent in Briones.

PETITIONS DENIED.

11